**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **KEVIN LONDEL SIMS,** | : |
| | : |
| *Plaintiff*, | : |
| | : |
| v. | : **CIVIL ACTION** |
| | : **NO. 22-5260** |
| **UNIVERSITY OF PENNSYLVANIA** | : |
| **HEALTH SYSTEM and HOSPITAL OF** | : |
| **THE UNIVERSITY OF PENNSYLVANIA,** | : |
| | : |
| *Defendants*. | : |

## <u>MEMORANDUM OPINION</u>

**Scott, J.**                                                                        **March 7, 2025**

      Plaintiff Kevin Londel Sims ("plaintiff" or "Sims"), an African American male proceeding *pro se*, brings this action under Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§2000e, *et seq*. ("Title VII"), against two of his former employers: the University of Pennsylvania Health System, where he worked from 2006 to 2011 as an administrative assistant; and the Hospital of the University of Pennsylvania,[1] where he worked from July 1, 2011 until his termination on May 24, 2022 as a transplant health coordinator.  He alleges that the defendant discriminated against him on the basis of his race and gender, and that he was subjected to a pervasive pattern of harassment based on his race, and subject to a hostile work environment, which led to his being unlawfully discharged.

      The defendant, The Trustees of The University of Pennsylvania, has moved to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for

---

[1] According to the defendants, the "The Trustees of The University of Pennsylvania" is the proper defendant.  Accordingly, the Court will refer to the defendants as "The Trustees of The University of Pennsylvania" or "defendant."

which relief can be granted.  ECF No. 38.  Since then, the plaintiff has filed fourteen motions and the defendant three.  This includes several motions filed by the plaintiff for leave to further amend his amended complaint, a motion for sanctions filed by the defendant, and several motions filed by both parties to strike motions and briefs filed by the opposing party.  For the reasons explained below, the Court will grant the plaintiff's motions for leave to amend his amended complaint, grant the defendant's motion to dismiss, and deny the defendant's motion for sanctions.[2]

## I.    PROCEDURAL HISTORY

Sims filed his EEOC charge in July 2022, and on December 21, 2022, the EEOC issued his Notice of Right to Sue Letter.  He instituted this action on December 29, 2022, when he filed his complaint against the defendant.  ECF No. 2.  On January 18, 2023, he filed an amended complaint.  ECF No. 6.  Before the amended complaint was served, on April 24, 2023, the defendant filed a motion to dismiss the amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(4) and 12(b)(5) for insufficient process and insufficient service of process.  ECF No. 12.  During a hearing on February 21, 2024, the Court found that Sims had not served the defendant with any complaint.  ECF No. 31.  The Court permitted the plaintiff to serve defendant's counsel directly and granted an additional twenty-one days for him to complete this service.  ECF No. 30.  The Court also informed the parties that it would deny plaintiff's request for a default judgment due to his failure to properly serve the defendant, and that the defendant's motion to dismiss would be denied.  The next day, those orders were entered.  *See* ECF Nos. 30 and 31.

On March 10, 2024, the plaintiff filed a motion seeking reconsideration of the Court's denial of his request for default judgment.  ECF No. 34.  On September 21, 2024, the court denied the plaintiff's motion for reconsideration.  ECF No. 69.  Since the time the plaintiff filed his motion

---

[2] The Court will also explain its disposition of the other pending motions in this opinion.

for reconsideration, the defendant filed four motions and Sims filed fourteen, all of which are pending.  The following is a list of the pending motions, which the Court will address *infra* in this opinion.

ECF No. 38:  Defendant's Motion to Dismiss Plaintiff's Amended Complaint

ECF No. 44:  Defendant's Motion to Strike Plaintiff's Improper Filing (ECF No. 43)

ECF No. 45:  Plaintiff's Motion for Leave to Amend ECF No. 43 (his Sur-Reply in opposition to defendant's motion to dismiss) and to Strike ECF No. 42 (Defendant's Reply in support of its motion to dismiss)

ECF No. 46:  Defendant's Motion to Strike Plaintiff's Improper Filing (ECF No. 45)

ECF No. 48:  Plaintiff's Motion for Relief Under Rule 60(b)

ECF No. 50:  Plaintiff's Motion for Leave to Amend Complaint Under Rule 15

ECF No. 51:  Plaintiff's Motion for Appointment of Counsel

ECF No. 55:  Defendant's Motion for Sanctions Under Rule 11

ECF No. 58:  Plaintiff's Motion to Strike the Defendant's Motion for Sanctions

ECF No. 59:  Plaintiff's Motion for an Order Directing Defendants to Provide Current Contact Information

ECF No. 61:  Plaintiff's Motion to Strike Defendant's Response (ECF No. 60)

ECF No. 62:  Plaintiff's Motion Under Rule 60(b)(1) to Correct Plaintiff's Motion for Leave to Amend Complaint (ECF No. 50)

ECF No. 65:  Plaintiff's Motion for Leave to Correct the Title of ECF No. 58 - his Motion to Strike Defendant's Motion for Sanctions

ECF No. 66:  Plaintiff's Motion to Strike Defendant's Response (ECF No. 64)

ECF No. 68:  Plaintiff's Motion for Leave to Amend ECF No. 48 - his Motion for Relief Under Rule 60(b) - to Correct the Rule Used and the Certificate of Service

ECF No. 72:  Plaintiff's Motion for Leave to File an Additional Brief in support of his motion to file an amended complaint

ECF No. 73: Plaintiff's Motion for Leave to Submit a Supplemental Brief in support of his motion to appoint counsel

ECF No. 74: Plaintiff's Motion for Leave to Submit a Corrected Version of ECF No. 73

## II.    FACTUAL BACKGROUND

*Plaintiff's Amended Complaint*

In the amended complaint, which was filed on January 18, 2023, Sims alleges that the defendant discriminated against him on the basis of his race and gender, and engaged in "discriminatory retaliation."   Amended Complaint (ECF No. 6) at 3.   He claims that he was subjected to a pervasive pattern of harassment based on his race, which led to his being unlawfully discharged.   ECF No 6-1 at 6.   It is his "belief there were multiple undertones of several types and patterns of discrimination on the basis of [his] race that led to [his] termination" that came from his former supervisors Edward Sockol, the Manager of Operations and Community Relations, and George Vivacqua, the Business Operations Administrator, both of whom are Caucasian males. *See* ECF No. 6-1 at 31.   He also claims that he was subject to a hostile work environment.

Sims was told that he was terminated after a slew of incidents for which he was disciplined, including clocking out of work and then sleeping in a guest room at the Clyde F. Barker Penn Transplant House, leaving his workplace at 5 p.m. but not clocking out until 6:33 p.m., and starting work fifty minutes after clocking in.   He claims that these reasons were pretextual, and that he was actually mistreated and then terminated because the defendant discriminated against him on the basis of his race and gender.

Sims provides a few examples of incidents involving Sockol that allegedly evidence acts of racial discrimination and harassment against him.   In one incident that occurred on October 25, 2021, Sims overheard Sockol asking a member of the maintenance staff some questions about

parking, and when Sims tried to join the conversation to answer Sockol's questions, Sockol purportedly turned his back on him and ignored him. Sims reported this incident four months later to Vivacqua and Michael Lewis, a senior HR employee, but they did not follow-up. ECF No. 6-1 at 31.

Another incident occurred on November 8, 2021, during Sims' final warning meeting with Sockol and a person from Human Resources. He alleges the warning occurred "because of an incident related to company protocol regarding clocking out." After Sims mentioned that he thought the issues addressed at the meeting could have been solved with a verbal warning and a conversation instead of in the form of a final warning meeting, Sockol responded by saying, in a "visibly angry manner," that they could not have had a conversation to resolve this. ECF No. 6-1 at 31–32. Three days later, Sims texted Vivacqua to inform him about what had transpired at the final warning meeting, complaining that the meeting did not resolve any professional issues that had been arising since Sockol began his position at the Transplant House just a few weeks earlier. He told Vivacqua that he was now "nervous" about working with Sockol and that he did not want to return to the "tense working environment." Sims asked him for direction on what could be done to address his "nervousness" and to "bring the stress level down at the Transplant House." Neither Vivacqua nor any staff member followed up with Sims to address his concerns. *Id.* at 23; *see also* Plaintiff's Motion Under Rule 60(b)(1) to Correct Plaintiff's Motion for Leave to Amend Complaint (ECF No. 62) at 9–10.

In a third incident, which occurred on February 22, 2022, Sockol walked into the conference room where Sims was standing, and when Sims mentioned that it would be bad timing to go out into the rain at that time, Sockol responded that "yes, it would be bad timing" and said "fuck you" under his breath. Sims notified Human Resources and Vivacqua about this incident,

wherein he "expressed the worry [he] had about [his] well-being due to the undertones of racism from Edward Sockol." Although this incident was investigated, and Sims asked for the results, he was never given the written findings of the investigation. ECF No. 6-1 at 17, 32.

In a fourth example, Sims alleges that Sockol "displayed the undertones of discrimination" when, in response to Sims' requests for a consistent work schedule, he was given "the most unusual schedule [he] had ever received during [his] entire time working for" the defendant. *Id*. at 32.

The amended complaint also contains a claim for "wage theft" related to Sockol's denial of plaintiff's request to be paid under the defendant's jury duty policy. Sims alleges that the "Jury Duty Policy Number 2-06-15 with an effective date of 6/01/2021 forced me to use my accrued vacation hours. With an assigned schedule of 11 hours on Fridays the day I had a summons date of January 21, 2022, the policy only covers an 8-hour work day. I also requested to work the 3 hours my next shift in order not to use my PTO [but] Edward Sockol denied my request." ECF No. 6-1 at 21.

*Plaintiff's Motions for Leave to Amend His Amended Complaint*

Among the many other motions filed in this case, Plaintiff also submitted numerous motions to amend his already amended complaint. On June 24, 2024, the plaintiff filed a motion for leave to amend his amended complaint[3] pursuant to Rule 15 in order to correct deficiencies in his amended complaint. ECF No. 50. In the motion, he refers to proposed amendments, but fails to attach a proposed amended pleading. Nor does the plaintiff identify the deficiencies he wants to correct. More than two months later, on September 5, 2024, the plaintiff filed a motion under Rule 60(b)(1) to correct his motion for leave to amend complaint. ECF No. 62. In this later-filed

---

[3] The Court construes plaintiff's request to amend the amended complaint as a request for leave to file a second amended complaint.

motion, Sims acknowledges that he failed to attach a proposed amended complaint to his earlier

motion, and attaches a proposed amended complaint to this motion.  *See* ECF No. 62 at 7–79.  One

month later, Sims filed yet another motion related to his request to amend the complaint.  In this

motion, he requests leave to file an additional brief in support of his motion to file an amended

complaint, and to attach several new exhibits to the complaint.  ECF No. 72.

*Defendant's Motion to Dismiss*

In the defendant's motion to dismiss the amended complaint, the defendant argues that

Sims fails to state a claim under Title VII because the amended complaint, and the documents

attached to it, lack factual support for his claim that he suffered discrimination on the basis of his

race or gender, or that he was retaliated against for engaging in any protected activity.  ECF No.

38-1.  It also argues that any harassment claim must fail because the amended complaint lacks

facts establishing that Sims suffered any severe or pervasive harassment or that any such

harassment was motivated by his membership in a protected class.

The defendant notes that on the form plaintiff uses for the amended complaint, he indicates

that he is "not sure" of the basis for the discrimination.  ECF No. 38-1 at 2, 3, 10.  The defendant

also points to Sims's various explanations for the termination of his employment.  For example,

Sims alleges that his termination was in retaliation for telling Vivacqua in an email that he might

look for a job in another department because he was not receiving information that was being

shared with others, such as about a work event, that would have enabled him to properly perform

his job duties.  ECF No. 6-1 at 32.  In another example, Sims alleges that his termination was

retaliation against him for "words" he used in a text to Vivacqua on November 11, 2021 about

what had transpired at the November 8, 2021 final warning meeting between Sims and Sockol,

including his complaints that the meeting did not resolve any professional issues that had been

arising since Sockol began his position at the Transplant House, and how he was "nervous" about working with Sockol and did not want to return to the "tense working environment."  ECF No. 6-1 at 23; ECF No. 62 at 9.

In response to the motion to dismiss, Sims explains that he put "not sure" about the type of discrimination on the amended complaint form because the discrimination he experienced was "subtle and indirect, . . . particularly the undertones of racism."  Pl.'s Continued Opposition Response to Def.'s Filing ECF #38 (ECF No. 40) at 1.  He states that it was "challenging for [him] to categorize these experiences into specific types of discrimination, especially when the nuances of such behavior were not always clear-cut."  *Id.* at 2.

In its Reply in support of its motion, the defendant contends that the plaintiff "concedes that he does not know why he was terminated."  ECF No. 42 at 2, 4.  In response to that Reply, Sims filed a Sur-Reply, in which he argues that the defendant's Reply "incorrectly states that I conceded that I did not know why I was terminated, [as that] is a statement I did not make."  Pl.'s Response to Def.'s Brief ECF #42 (ECF No. 43) at 1.  On that basis, he asks the Court to "disregard the defendant's brief in its entirety."  *Id.*

*Defendant's Motion for Sanctions Against Plaintiff*

On August 15, 2024, the plaintiff filed a "Notice to the Court of Possible Violations Committed by Defendant of 28 U.S.C. § 1875 and 42 Pa. C.S.A. § 4563" ("Notice").  ECF No. 53.  In the Notice, plaintiff alleges that Sockol rejected plaintiff's request to adjust his hours on January 21, 2022, when he was called for jury duty, forcing him to use his accrued vacation time.  Because Sockol cited the defendant's Jury Duty Policy as a basis to deny plaintiff's request, Sims claims that this policy violates 28 U.S.C. § 1875 and 42 Pa. C.S.A. § 4563, which are state and federal statutes that protect juror employment rights.  In the Notice, Sims requests the Court to

consider whether the defendant violated either of these statutes, and if so, to "take action it deems necessary and just to address the violations."  ECF No. 53 at 2.  Plaintiff attached the defendant's policy on jury duty pay to the Notice.  *Id.* at 5–6.

In response to the plaintiff's Notice, the defendant filed a motion for sanctions, ECF No. 55, and a week later, a response brief in opposition to the Notice.  ECF No. 60.  In its motion for sanctions, the defendant states as follows:

> Given the sheer number of pending motions in this matter, including one for appointment of plaintiff's counsel, the only possible purposes of Plaintiff's Notice to the Court is to annoy and harass Defendant, to possibly distract the Court from deciding the remaining motions, including a Motion to Dismiss and multiple Motions to Strike Plaintiff's submissions, and to needlessly increase Defendant's costs of litigation.

ECF No. 55-1 at 4.  Additionally, the defendant construes plaintiff's Notice as an improper attempt to amend his amended complaint, especially because it was filed while a motion for leave to amend his complaint is currently pending with the court.  ECF No. 55-1 at 4, 8 & n.3.  The defendant also contends that this amendment request is filed too late because it asserts new claims.  Although the defendant acknowledges that Sims previously raised general allegations of "wage theft" in his amended complaint and sought reimbursement for vacation time he had to use for the day he served on jury duty, the defendant notes that its policy on reimbursement for jury duty was not attached to the amended complaint.  ECF No. 55-1 at 4.  Additionally, plaintiff had not sought relief under 28 U.S.C. § 1875 and 42 Pa. C.S.A. § 4563 in his amended complaint.

The defendant further argues that the plaintiff's "frivolous claims are part of a pattern of improper tactics" that he has used throughout this litigation, including "besiege[ing] this Court and Defendant's counsel with meritless filings."  *Id.* at 9 (listing plaintiff's motions).  It notes that "even when gifted permission by the Court to serve the Complaint directly to counsel, Plaintiff

blatantly disregarded the Court's instructions. . . . , [i]nstead . . . elect[ing] to ignore the Court and fil[ing] a Motion for Reconsideration on Plaintiff's Motion for a Default Judgment."[4]  It contends that "plaintiff's barrage of motions has not given the Court enough time to respond to his repeated motions before plaintiff files additional motions."  *Id.* at 10.  It argues that his "persistence in filing improper filings, despite the Court's directive, suggests sanctions are appropriate."  *Id.* at 9. Although the defendant notes that the Court has the power to issue an injunction barring a *pro se* plaintiff from filing more frivolous motions, the relief it requests is limited to that available under Rule 11: to strike the Notice from the record, and to award defendant costs and fees associated with preparing the motion for sanctions.  *Id.* at 10–11.

In its response in opposition to the Notice, the defendant argues that the Notice should be stricken from the record for three reasons.  ECF No. 60.  First, there is no provision under the Federal Rules of Civil Procedure or in the local Rules of Procedure that contemplates a Notice to the court.  *Id.* at 3.  Second, Sims is improperly attempting to amend his allegations about improper payment of wages during his employment with the defendant.  *Id.* at 4.  Third, the defendant denies the plaintiff's claims that it violated any statute protecting jurors' employment rights.  *Id.*

In his response to the defendant's motion for sanctions, Sims states that he believed filing the Notice was appropriate because he was adding the defendant's policies as exhibits once he became aware of them and reviewed them.  ECF No. 58.  He argues that this is the best he can do without an attorney.  He also contends that the defendant did not wait the promised 21 days to allow him to withdraw his notice before filing its motion.  *Id.*  Plaintiff asks the court to deny the motion for sanctions, as well as to strike the motion from the record.  *Id.*

---

[4] On March 10, 2024, Sims filed a motion for reconsideration of the Court's denial of his request for default judgment.  ECF No. 34.  The Court denied the motion on September 21, 2024.  ECF No. 69.

In its Reply in support of its motion for sanctions, the defendant contends that the plaintiff waived its right to have 21 days to withdraw his Notice.  ECF No. 63 at 1–2.  It notes that on the same day that the defendant notified Sims that it would file its motion for sanctions if he did not withdraw his Notice within 21 days, Sims responded by stating that he would "not remove the Notice to the Court" and that he would "also be filing a second Notice to the Court soon" with additional alleged violations.  Because a motion for sanctions may be filed before the 21-day safe harbor provision of Rule 11 has expired if the recipient of the motion refuses to withdraw his position, the defendant argues that Sims thereby waived the 21-day period of the safe harbor provision.  *Id*. at 2-3.

In response to the defendant's opposition brief to the Notice, the plaintiff filed a motion to strike the defendant's brief on the grounds that it is an attempt to introduce new points and arguments not previously raised in the motion for sanctions, which is prejudicial to the plaintiff. ECF No. 61.

*Plaintiff and Defendant's Motions to Strike*

Both parties requested that the Court strike the other's fillings. In response to plaintiff's Sur-Reply to defendant's motion to dismiss the amended complaint, the defendant moved to strike the Sur-reply as improperly filed because Sims did not ask for leave of court to file this supplemental brief in violation of the Local Rules of Procedure and Judge Scott's Policies and Procedures.  ECF No. 44.

Plaintiff then moved under Federal Rule of Civil Procedure 15 to amend his Sur-Reply, changing it from a request for the court to disregard the defendant's brief to a motion to strike the defendant's brief from the record.  ECF No. 45 at 1.  Defendant responded to that motion with its

own motion to strike the plaintiff's motion to amend its Sur-Reply, arguing that because a sur-reply is not a pleading, Rule 15 does not apply.  ECF No. 46 at 3-4.

*Plaintiff's Motion for Appointment of Counsel*

In addition to all the other motions in this case, Plaintiff also filed a motion on August 1, 2024, for appointment of counsel.  ECF No. 51.  One week later, Sims filed his brief in support of the motion.  ECF No. 52.  Roughly two months later, Sims filed a motion to submit supplemental briefing in support of his motion to appoint counsel.  ECF No. 73.

### III.    DISCUSSION

*Plaintiff's Motions for Leave to Amend His Amended Complaint*

Sims has filed two motions in which he seeks to file a second amended complaint: Plaintiff's Motion for Leave to Amend Complaint Under Rule 15 (ECF No. 50), which he filed on June 24, 2024, and Plaintiff's Motion Under Rule 60(b)(1) to Correct Plaintiff's Motion for Leave to Amend Complaint (ECF No. 62), which he filed more than two months later.  In the first motion, Sims asks for leave to amend his amended complaint pursuant to Rule 15 in order to correct deficiencies in the amended complaint.  ECF No. 50.  In the second motion, the plaintiff seeks relief under Rule 60(b)(1) to correct his first motion, wherein he had failed to attach a proposed amended complaint.  ECF No. 62.[5]  Additionally, in Plaintiff's Notice (ECF No. 53), Sims appears to assert a new claim that the defendant's Jury Duty Policy violated his rights under 28 U.S.C. § 1875 and 42 Pa. C.S.A. § 4563, which are state and federal statutes that protect juror employment

---

[5] Sims also filed a motion for leave to file an additional brief with additional exhibits in support of his motion to amend the complaint.  ECF No. 72.  Because he filed this motion more than one month after filing his Rule 60(b)(1) motion, and more than three months after filing his first motion for leave to amend, and because he fails to highlight which parts of the 66-page filing are new arguments and new exhibits, the Court will deny this motion.

rights.  He also attaches the defendant's policy on jury duty service to the Notice, which was not attached to the amended complaint.

Leave to amend a pleading is freely granted "when justice so requires."  *Shane v. Fauver*, 213 F.3d 113, 115-17 (3d Cir. 2000) (quoting Fed. R. Civ. P. 15(a)); *Berkshire Fashions, Inc. v. M.V. Hakusan II*, 954 F.2d 874, 886-87 (3d Cir. 1992).  Factors considered are undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by previously allowed amendments, undue prejudice to the opposing party, and futility of the amendment.  *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004); *Foman v. Davis*, 371 U.S. 178, 182 (1982).

There are few differences between the proposed second amended complaint and the amended complaint.  The proposed amendment describes the same incidents involving Sockol and Vivacqua that the plaintiff describes in his amended complaint, albeit in somewhat more detail. For example, the proposed amendment refers to an email Sims sent to Vivacqua on November 24, 2021, where he describes how he felt scared to be alone in a room with Sockol based on Sockol's getting "visibly angry and in tone" for the third time.  The amended complaint only refers to two incidents when Sockol got "visibly angry" with him.  Additionally, Sims attaches a few more of the defendant's policies to the proposed amendment, including the defendant's policy on jury duty service.

These small differences will not prejudice the defendant.  Including an allegation of Sockol getting "visibly angry and in tone" on one additional occasion is not a new claim.  Nor will allowing the plaintiff to include the defendant's jury duty policy to the amended complaint be unduly prejudicial, as the plaintiff referred to the policy and described its terms in the amended complaint.  Therefore, the Court will allow the plaintiff to file a second amended complaint, which

will be in the form of the proposed complaint attached to ECF No. 62 at pages 7–79.

However, to the extent that the plaintiff's Notice is a request to assert claims that the defendant's Jury Duty Policy violated his rights under 28 U.S.C. § 1875 and 42 Pa. C.S.A. § 4563, that request will be denied. Any such claims are new, rendering Sims's request to amend the complaint to include these claims untimely.

*Defendant's Motion to Dismiss*

<u>Standard of Review</u>

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). A conclusory recitation of the elements of a cause of action is not sufficient. *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021). The plaintiff must allege facts necessary to make out each element. *Id.* (citations omitted).

In considering a motion to dismiss under Rule 12(b)(6), all well-pleaded allegations in the complaint are accepted as true and interpreted in the light most favorable to the plaintiff, and all inferences are drawn in the plaintiff's favor. *See McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009) (quoting *Schrob v. Catterson*, 948 F.2d 1402, 1408 (3d Cir. 1991)). Additionally, a *pro se* plaintiff's pleadings must be considered deferentially, affording him the benefit of the doubt where one exists. *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013) (citing *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011)); *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003) (citing *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002)). This means the court must

construe a *pro se* complaint "liberally . . . . apply[ing] the relevant legal principle even when the complaint has failed to name it." *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala*, 704 F.3d at 244). Nevertheless, the plaintiff must allege facts necessary to make out each element of each claim he asserts. *Mala*, 704 F.3d at 245; *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 563 n.8). A conclusory recitation of the elements of a cause of action is not sufficient. *Id.*

<u>Standards Under Title VII</u>

To make out a cause of action for discrimination under Title VII, a plaintiff must plead sufficient facts that show: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) nonmembers of the protected class were treated more favorably under circumstances giving rise to an inference of unlawful discrimination. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 788 n.5, 791 (3d Cir. 2016) (citations omitted).

To plead a hostile work environment claim under Title VII, a plaintiff must allege facts that show: (1) he suffered intentional discrimination because of his protected status; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected him; (4) the discrimination would detrimentally affect a reasonable person in like circumstances; and (5) the existence of *respondeat superior* liability. *Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017) (citation omitted).

To establish a *prima facie* case of retaliation, a plaintiff must demonstrate that: (1) he engaged in a protected activity; (2) his employer took adverse employment action against him after or contemporaneously with his protected activity; and (3) there was a causal connection between his participation in the protected activity and the adverse employment action. *Daniels v. School*

*Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015) (citations omitted). Protected activity can include

complaints about discriminatory employment practices made to management. *Id.* The complaint

must "implicate an employment practice made illegal under Title VII." *Davis v. City of Newark*,

417 F. App'x 201, 203 (3d Cir. 2011) (citation omitted).

<u>Analysis of Motion to Dismiss</u>

Sims fails to state a claim under Title VII because the amended complaint, the second

amended complaint,[6] and the documents attached to them, lack factual support for his claim that

he suffered discrimination on the basis of his race or gender, or that he was retaliated against for

engaging in any protected activity.[7]

Based on the following allegations, Sims claims that he was discriminated against and

subject to a hostile work environment on account of his race and gender:

- Sims's supervisor, Edward Sockol, turned his back on him and ignored him when Sims tried to interject himself into a conversation Sockol was having with a maintenance worker. Although Sims reported this incident to a higher-level supervisor and HR employee, no one followed up with him about his complaint.

- After Sims mentioned at his final warning meeting with Sockol that he thought the issues addressed at the meeting could have been solved with a verbal warning and a conversation instead of in the form of a final warning meeting, Sockol responded in a "visibly angry manner" when he said that they could not have had a conversation to resolve this. Although Sims reported this incident to a higher-level supervisor and told him this incident made him nervous about working with Sockol, no one followed up with him about his complaint.

- On February 22, 2022, Sockol walked into the conference room where Sims was standing, and when Sims mentioned that it would be bad timing to go out into the rain at that time, Sockol responded that "yes, it would be bad timing" and said "fuck you" under his breath.

---

[6] Because the Court has granted Sims leave to file a second amended complaint, which is virtually identical to the amended complaint (*compare* ECF No. 62 at pp. 7-79 *with* ECF No. 6 and 6-1), in the interest of judicial efficiency, the Court will construe the defendant's motion to dismiss the amended complaint as also moving to dismiss the second amended complaint.

[7] Plaintiff does meet the first three elements of a *prima facie* case for discrimination under Title VII: (1) He is a member of a protected class; (2) he was qualified for the position; and (3) he suffered an adverse employment action.

Sims notified a higher-level supervisor and Human Resources about this incident, expressing "the worry [he] had about [his] well-being due to the undertones of racism from Edward Sockol," and the incident was investigated.  But Sims was never given the written findings even though he had asked for them.

- Sockol "displayed the undertones of discrimination" when, in response to Sims's requests for a consistent work schedule, he was given "the most unusual schedule [he] had ever received during [his] entire time working for" the defendant.

Accepting these alleged facts as true and drawing all reasonable inferences from them in the plaintiff's favor, none of these allegations plausibly give rise to an inference that the defendant's actions toward Sims were based on racial or gender-based animus.  Sims's claims that he felt that he was discriminated against and subject to a hostile work environment on the basis of his race and gender are conclusory.  He fails to plead how non-members of his protected class were treated more favorably under circumstances giving rise to an inference of unlawful discrimination.

"It is well settled that an inference of discrimination 'cannot arise simply from an employee's subjective belief that his or her [protected status] somehow influenced the challenged employment action.'"  *Larison v. Fedex Corp. Servs., Inc.*, No. CV 16-5921, 2017 WL 2569206, at *8 (E.D. Pa. June 13, 2017) (citing *Kier v. F. Lackland & Sons, LLC*, 72 F. Supp. 3d 597, 609 (E.D. Pa. 2014)).  "The Court cannot infer race-based discrimination simply from [a plaintiff's] subjective belief that [his employer's] decision to terminate him was motivated by racial bias." *Burgess v. Reading Parking Auth.*, No. 5:23-CV-3390, 2024 WL 3678680, at *6 (E.D. Pa. Aug. 6, 2024) (citation omitted).

Based only on his subjective belief, Sims is asking the Court to infer that his treatment by his supervisors and termination by the defendant were motivated by racial and gender bias.  Sims recites the legal elements of a claim for discrimination without providing the requisite factual allegations connecting the defendant's reasons for terminating him to his race or gender.

Nor do the allegations in the amended complaint and second amended complaint plausibly establish that Sims was subject to "severe or pervasive" harassment or that any such harassment was motivated by his membership in a protected class. Like his claims of discrimination, Sims's claim of a hostile work environment is based entirely on his subjective belief that the defendant and its employees harassed him because of his race or gender.

Because an employee's subjective belief that his employer's treatment of him or decision to terminate him was motivated by racial or gender animus is not enough to state a Title VII discrimination claim, none of the incidents, actions or events plead in the amended complaint or second amended complaint rise to a level constituting an act of racial or gender discrimination or harassment. Thus, Sims fails to plead plausible claims under any theory of discrimination, be it race, gender or hostile work environment.

The plaintiff's claim for retaliation under Title VII must also be dismissed because the complaint fails to plausibly plead a causal connection between his termination by the defendant and his participation in a protected activity under Title VII. Sims alleges that he was terminated in retaliation for telling Vivacqua in an email that he might look for a job in another department because he was not receiving information that was being shared with others, such as about a work event, that would have enabled him to properly perform his job duties. He also alleges that his termination was retaliation against him for "words" he used in an email to Vivacqua about what had transpired at the final warning meeting between Sims and Sockol, including his complaints that the meeting did not resolve any professional issues that had been arising since Sockol began his position at the Transplant House, and how he was "nervous" about working with Sockol and did not want to return to the "tense working environment."

None of these complaints to management "implicate an employment practice made illegal

under Title VII." Being terminated for threatening to seek a transfer to another department because he was not receiving information that would enable him to do his job better does not constitute "protected activity" under Title VII because he did not complain that the defendant was discriminating against him on the basis of his race or gender. Nor do Sims's complaints to upper management that the final warning meeting did not resolve any professional issues, and that he was "nervous" about continuing to work with Sockol, qualify as "protected activity." Thus, because none of his alleged complaints to management implicate a discriminatory practice by the defendant, Sims's claim for retaliation under Title VII fails.

Because Sims has not plead sufficient facts supporting a plausible inference that the defendant terminated him, harassed him, or retaliated against him on account of his race or gender, the Court will grant the defendant's motion to dismiss the amended complaint and the second amended complaint.

### *Leave to Further Amend Will Be Denied*

When an amendment would be futile, leave to amend should be denied. Futility means that even after amendment, the complaint would still fail to state a claim. *In re Alpharma Sec. Litig.*, 372 F.3d 137, 153 (3d Cir. 2004) (citation omitted). Leave to amend will be also be denied where there is a repeated failure to cure deficiencies by previously allowed amendments. *Alston*, 363 F.3d at 236; *See also Winer Family Tr. v. Queen*, 503 F.3d 319, 331-34 (3d Cir. 2007) (where the proffered amendment fails to cure the deficiencies in the earlier complaint, amendment would be futile).

Here, a third amended complaint would be futile. The plaintiff has been given several opportunities to amend his complaint, and the most recent amendment does not state a claim for relief. Therefore, the plaintiff is denied any further opportunity to amend his complaint, and the

plaintiff's claims asserted in the complaint, amended complaint, and second amended complaint will be dismissed with prejudice.

*Defendant's Motion for Sanctions*

In its motion for sanctions, the Trustees of The University of Pennsylvania has requested the Court to strike the Plaintiff's "Notice to the Court of Possible Violations Committed by Defendant of 28 U.S.C. § 1875 and 42 Pa. C.S.A. § 4563" ("Notice") from the record, and to award the defendant costs and fees for preparing the motion for sanctions. ECF No. 55-1 at 10-11. It argues that "given the sheer number of pending motions in this matter, the only possible purposes of Plaintiff's Notice to the Court is to annoy and harass Defendant, to possibly distract the Court from deciding the remaining motions, including a Motion to Dismiss and multiple Motions to Strike Plaintiff's submissions, and to needlessly increase Defendant's costs of litigation." *Id.* at 4.

The defendant correctly notes that the plaintiff has filed an inordinate number of motions, many of which are not in compliance with the Federal Rules of Civil Procedure. Nonetheless, the Court will deny the defendant's motion.

Because the plaintiff is proceeding *pro se*, the Court is sensitive to the fact that he is not well versed in understanding the Federal Rules of Civil Procedure. Without conducting a hearing, the Court is unable to ascertain whether he has filed any of the motions with ill will or intent to harass the defendant and increase its litigation costs, or just does not understand how to litigate a case in court. The Court recognizes that the plaintiff did not have the guidance of an opinion or ruling on his earlier-filed motions until now.

Additionally, because the Court is granting the defendant's motion to dismiss the plaintiff's amended complaint with prejudice, the plaintiff will no longer have a reason to file motions in this action. However, in case the plaintiff continues his course of filing unnecessary motions, the Court

will deny the motion for sanctions without prejudice, which will allow the defendant to re-file the motion if it desires.

*Remaining Motions*

Three Motions Re: Plaintiff's Sur-Reply in Opposition to Defendant's Motion to Dismiss

Defendant's Motion to Strike Plaintiff's Improper Filing (ECF No. 44)

Plaintiff's Motion for Leave to Amend his Sur-Reply (ECF No. 45)

Defendant's Motion to Strike Plaintiff's Improper Filing (ECF No. 46)

The plaintiff filed a sur-reply in response to the defendants' reply brief in support of its motion to dismiss in which he disagreed with the defendant's characterization of the arguments he made in his initial response to the motion to dismiss.  On this basis, Sims asked the Court to "disregard the defendant's brief in its entirety."  In response, the defendant moved to strike the plaintiff's sur-reply as improperly filed for failure to ask the court for leave to file it.  (ECF No. 44).  In deference to the plaintiff's *pro se* status, the Court will deny the defendant's motion to strike.

A few days later, the plaintiff filed a motion under Rule 15 to amend his sur-reply, requesting to change it to a motion to strike the defendant's reply brief in support of its motion to dismiss.  (ECF No. 45).  Because the defendant's reply brief was properly filed, the plaintiff's motion to strike will be denied.

Defendant then filed a motion to strike the plaintiff's motion to strike its reply.  (ECF No. 46).  Because the Court has denied the plaintiff's motion to strike the defendant's reply brief, defendant's motion will be denied as moot.

<u>Three Motions Related to Plaintiff's Motion to Appoint Counsel</u>

Plaintiff's Motion for Appointment of Counsel (ECF No. 51)

Plaintiff's Motion for Leave to Submit a Supplemental Brief in support of his motion to appoint counsel (ECF No. 73)

Plaintiff's Motion for Leave to Submit a Corrected Version of ECF No. 73 (ECF No. 74)

The plaintiff filed a motion for appointment of counsel (ECF No. 51), as well as a motion to submit a supplemental brief in support of his motion to appoint counsel (ECF No. 73). He also filed a motion for leave to submit a corrected version of his motion to file a supplemental brief due to formatting errors. (ECF No. 74).

Because the Court has dismissed this action with prejudice, all three of these motions will be denied as moot.

## IV.    CONCLUSION

The plaintiff's request for leave to file a second amended complaint will be granted. But Sims has failed to plead sufficient facts to state a claim under Title VII for racial or gender discrimination, harassment or retaliation. Therefore, the Court will grant the defendant's motion to dismiss, and all claims asserted in the amended complaint and in the second amended complaint are dismissed with prejudice. However, the Court will deny the defendant's motion for sanctions without prejudice.

**BY THE COURT:**

/S/Kai N. Scott
_____
**HON. KAI N. SCOTT**
**United States District Court Judge**